Will the clerk please call the first case of the morning? 518-0012, Edgar Bledsoe v. The Workers' Compensation Commission. Counsel, you may proceed. May it please the court, my name is Bruce Besore and I represent Edgar Bledsoe. As you see this morning, I have done what you usually see me do. I've got what I thought I'd like to say, recognized I'll never get through that, so I did this. I don't think I'll get through it either, but I'm trying. So the commission's denial of this claim was wrong as a matter of law and also against the manifest way of the evidence. Mr. Bledsoe was an underground coal miner for 35 years and a lifelong never-smoker of cigarettes. Now the diseases in question are CWP, chronic bronchitis, sinusitis, and rhinitis. The commission adopted the decision of the arbitrator. In his 17-line decision, the arbitrator did not mention any disease but CWP. He didn't mention any weighing of the evidence for any other disease besides CWP. And of practically everything he wrote regarding CWP, he was wrong as a matter of law. The burden of the claimant regarding CWP is to prove that it's more likely than not that his disease of CWP manifested itself at some time, any time, prior to the running of Section 1F. Prior to two years following his date of last exposure. And at this time I want to put in here based on the testimony that exposure never ends. Coal dust is always in the lungs and exposes the tissue next to it. Exposure should probably be broken down into two kinds. Active exposure, when you're still in the mine, still putting dust in there every day. And residual exposure, the remainder of that dust. I'll come back to that later. In this case, Mr. Bledsoe's date of last exposure was November 2010. Therefore, as far as CWP goes, he had to prove that his CWP existed on at least November 13, 2012 or before. Even though the proof of that could occur through evidence offered after the 1F period. The burden of the claimant and the requirement of the employer are mirror images. The claimant has to prove it existed before 1F. The employer has to counter that if there was any CWP, it didn't exist until after 1F. Now, since the universal testimony, and that's what I like about this case and some of the others I've dealt with here, universal testimony, everybody agrees on what I'm going to say, is that CWP can manifest itself radiographically even after the co-worker leaves his active mining career. Looking at the evidence in this case, there were NIOSH readings, 1985, 87, 92, 94, 96, 2006, and February of 2011. None of those NIOSH x-rays were timely to be evidence of a lack of CWP before 1F ran. Mr. Bledsoe, I'm always intrigued by the arguments. You seem to be saying all of those x-rays and that they showed a lack of CWP are legally irrelevant. I understand your point that it could develop later, but I think that would respectfully go more to the weight. Why are you saying all of these x-rays that are negative for CWP up until a couple years before he leaves the coal mine are irrelevant? Because the legal question that is the burden of the claimant, my client, is that he has CWP by a certain specific date that's outlined by Section 1F. We know the date when he's got it. Completely agree with that. If the x-ray that's under consideration occurred a year or two before this time, every single person testified said he could have CWP that manifests itself in between when this last x-ray occurred. Very true, but why is it irrelevant? Does it tend to make the fit more or less likely? I mean, I can see your point. It's not definitive, but I'm hung up on why it's totally irrelevant. Because as I search for what will be meaningful to the court, I try to get down to the basic question. That is, what does this, what I'm calling irrelevant, x-ray prove? Even if we're 100% sure the x-ray is right, all it proves is he didn't have CWP on that date. Right. What does that mean in terms of what the burden of the claimant is? Nothing. Is there any evidence in the record that you introduced that he did have CWP on the date of that x-ray that was taken before he terminated his employment? Okay. I have to prove that he did have it. That's not my question. My question is, did you introduce any evidence in the record that some doctor diagnosed CWP on a date prior to the date he left the mine? The answer to that is yes. Yes. And so they're entitled to introduce evidence that suggests that your doctor is wrong. He didn't have CWP before he left the mines. This is the same thing we had yesterday. If you never introduced evidence that this man had CWP before he left the mines, then your argument that any evidence that they might introduce that he didn't have CWP before he left the mines may very well be irrelevant. But once you introduce evidence that he had COPD before he left the mines or CWP, they're entitled to attack that evidence. And they attack that evidence by a doctor saying, no, he didn't. I believe I have the answer to that question, Your Honor. Yeah. And let me walk into it by describing what it is that I'm going to say the proof is. The question is, can an untimely X-ray still be relevant to prove a timely X-ray incorrect and therefore wiping out my evidence? And here's what I say. Well, is it relevant or is it a weight issue? Is it relevant? I mean, you can argue, or is it weight? I mean, the example we have is that, yes, an employer can rebut a positive CWP X-ray. And the fact scenario you were given was, well, before he left the mine. But even within the two-year period, the same scenario occurs, it doesn't change anything. I think that that is one way to look at it, that it could be a matter of, if you're going to allow it in and look at it, it would be a matter of weight, and I think then, therefore, lacking in terms of what we need to prove. But then you argue the relative weight of that given the nature of the disease. I think the way I'd like to say it, if you'll allow me, is that, of course, you will look at it as you wish, and I will learn from that. I'm not saying that I'm the one who gets to make the decision. But what I'm saying is that at least if you allow that in, then it would go to a matter of weight. That's not my argument, but I'm saying I can understand that. Can I just go off on a tangent and spend a lot of time, but that's the reason I argue, because this week you said that NIOSH a couple times were not really relevant, and that's what I was talking about. Here, it occurs to me that you open the door once you introduce the evidence of CWP on some chest X-ray that took place before he left the mines. Now, most of the time in these cases, the evidence is the same. You have a doctor that says this chest X-ray on some specific date before he left the mines shows CWP. They introduce the testimony of a B-reader who reads the same X-ray and turns around and says no CWP. You can't argue that their evidence is irrelevant. You open the door once you had your guy testify. But I might be able to agree with your argument if your evidence of CWP is not from an X-ray taken before, but rather from an X-ray taken after he left the mines, but within the two years, and they try and introduce evidence of X-rays taken before he left the mines. You haven't opened the door, and I can understand your relevancy argument. It's a progressive disease. Just because he didn't have it a year and a half before he left the mines doesn't mean he didn't have it two years later. I understand the argument. But once you put in the evidence, I don't see how it could possibly be irrelevant. I'm going to skip right on down to my answer straight to that. Since 2011, I've done these cases without pay because it's what I think is right. Also, in the last two years, I've become a professor in internal medicine at the University of New Mexico. I go there all the time, and we do research on lung cancer. I also do that because I think it's right. I teach a class with them, and in working with them and their epidemiologists and their research people, I've learned something. When you hit a wall, you don't give up. You don't stop. What you do is sit down, break the thing down into component parts, and make a flow chart or a decision tree and get to the lowest common denominator and let that answer your question, and it almost always does. And here's the flow chart I see in comparing these x-rays that you're talking about, Justice Hoffman. In the analysis, you don't put the two readings side by side and say, I pick this one. And there is a medical basis for what I'm saying. The people who are going to make the judgment, the commission, the arbitrators, none of them are radiologists. None of them are pre-readers. They don't even see the x-ray. There is no basis for them to say, hmm, I agree with this one. There's no basis. So what you do is on the flow chart, on the decision tree, you do put these up there because they're important. But then you draw a line down from them to the second box, which says this guy and this guy said this is what I saw. But the most important question is what they say it meant. That one you can deal with. You don't have to be a radiologist for that. And that, I think, is getting to the root question. You can't do this. I'm going to stand here and say that the commission, the arbitrators, have no basis for making a medical conclusion regarding which one of these is right. But you don't disagree when we got down to that common box. What does it mean? That is testimony by the reader him or herself. Am I correct? That's testimony by the readers, yes. Okay. So they're free to reject or accept that testimony based on what you're saying they can't? No, I'm not only saying they're free to. I'm saying I'm asking them to. I'm asking you to tell them to based on the opinions of these people, which they can clearly do, not on the basis of the ILO. Aren't they really doing that or am I missing something? No, they're not for this reason. Okay. And it's kind of subtle, and like I say, this is all I do, and it's taken me how many years to figure this out? You haven't heard this from me before. But the two different x-ray readings are two different pieces of evidence, and the universal testimony says that. When you have a positive x-ray coupled with a sufficient history of exposure, that is a sufficient medical basis to make a diagnosis of CWP. One piece of evidence. The negative x-ray is a different piece of evidence. You can't do with the negative x-ray what you did with this one because a negative x-ray can never rule it out. Because in the development of CWP, the first thing that happens is there's a tissue reaction. White cells come in. Okay, now we know that. But now we're dealing in the negative one. You could introduce evidence of probability, can't you, that there is no indication of CWP. Let's go ahead. But you could say, well, but it's progressive. It might be there, but it hasn't become apparent. Right? That's true. Because of the nature of the disease. And you're saying, over here I've got someone who says they can see it. But I've got someone who's over here who says we don't see it. And then it's a probability. I mean, I'm still not sure where we're in a different analysis system in this. Okay, let me take a whack at that. This guy in this pile of evidence here is saying he has CWP. And everybody of the universal testimony is, there's a good medical basis for that. But this guy says, I can't say he doesn't. And there's a medical basis for that. Everybody says that. Wait a minute. Wait a minute. It's not the way, generally, the way these opinions come in. This guy says, I've read the X-ray and I find evidence of CWP. This guy reads the X-ray and he says, I've read the X-ray and there is no evidence of CWP. Now, that's not two different means. Now the question becomes, for the fact finder, is what is the basis of this man's testimony and what is the basis of this man's testimony? Now, you know, I'm a simple guy. I take things to extremes. If your claimant's doctor says, I've read this X-ray and I find evidence of CWP, and my basis for that decision is I consulted the entrails of chickens, this guy is entitled to turn around and say, wait a minute. I read the X-ray and there is no evidence of granulation. There is no evidence of this, no evidence of that. The fact finder is going to turn around and say, wait a minute. We don't consult the entrails of chickens. Your basis is nonsense. I'm going with this guy. So really what your argument is is not as against the opinions, pro and con. The fact finder has to look at the basis for the opinions and has to make a decision as to which basis is more credible. I'm very happy today if we can get to the point that it's the basis of the opinions we're looking at. And I say that right now the way to find out is what did the guy say? The guy said he's got it. What did this guy say about that? He can agree with that because this guy saw stuff and he was a coal miner and so it could be. This guy can agree with this guy. All B readers are the same. They take the same test. They also have the same level of experience. Because I wanted to confront you with one final thing here because the arbitrator did something we usually don't see. He said he was particularly persuaded by Dr. Meyer's testimony where the relative levels of experience are particularly significant where the two B readers reached different conclusions. And that's what you're saying. They reached different conclusions. Arbitrator in the final analysis gave greater weight to Dr. Meyer because he said based upon his overall experience in pulmonary pathology and his status as an experienced B reader. So all experts are probably not created the same and don't have the same level of experience. You're a strong man that you set up as them being equal. The arbitrator would argue they were not equal in experience and expertise here. I would say that Dr. Meyer, who I like, I admire, I would have him take an X-ray of me on an importancy. But Dr. Meyer agrees with this guy. He says if he sees that stuff and he's got the cold Lyme exposure, that's a sufficient basis for him to say that. Dr. Meyer says, I don't see it, but that doesn't mean he doesn't have it. Now, so we're left. This is all we've got. And so we're piling up evidence. Two piles. My pile, the employer's pile. I don't know how he has it. Cannot be beaten by, I can't prove he does. And that's all we have. And we're looking for that medical basis. And that red light's on, but in light of the question, could I say one more thing? Yes, please. Okay. When it comes down to it, and you use the flow chart to get down to something we can understand, not a picture we can't read, but what was the opinion of these guys, I'm telling you that all B readers can be equal. You can accept the reading of both of these people. And I think they would. I agree with what Dr. Meyer in his long deposition says about CFP. I agree with all of it. I don't agree with what he said he saw, but I do agree with what he said it means. And so there's much more agreement between these B readers than one would think. And there's no clear, bright line on the ILO form, but there's a clear, bright line on what they say it means. And just the one other thing I want to say is, on CWP, on this case in particular, 20 of the 21 x-rays were not timely. That's not enough. And after the arbitrator finished analyzing in the 17 lines, only CWP didn't say a single word about chronic bronchitis, COPD, rhinitis, and sinusitis. So I'm asking you to send it back to say, look, 20 of these 21 weren't, and you didn't rule on these. Please rule on that stuff with the right evidence. That's all I'm asking. Okay. Thank you, counsel. You have time to reply. Counsel, we'll try to equalize the time. Thank you, Your Honor. If you need it. I don't know that I'll need it, but I want to try to address some of the issues that have been raised here. May it please the Court. My name is Julie Webb, here on behalf of the American Cold Company. First of all, I want to address the issue about the relevancy of the NIOSH x-rays. In this case, it's interesting, Mr. Wasore is talking about the 20 out of 21 chest x-rays, but he submitted two re-readings in this case, one from Dr. Smith and one from Dr. Alexander, both of the March 8, 2011, chest x-ray. That's the only positive readings in the evidence. The NIOSH x-rays, yes, they date back several years before Mr. Bledsoe left his coal mining employment, all the way up to actually one taken shortly after he left his coal mine employment. And as Justice Hudson mentioned, I think this goes to the weight of those chest x-rays. It doesn't mean that those x-rays are irrelevant. It shows that throughout his 35-year coal mine employment history, the chest x-rays were all read as negative. The claimant did not put in any evidence of a positive chest x-ray prior to the time he left his employment. But he's trying to suggest, and his argument, if I'm trying to finally get to understand it, is that that's all well and good, but it doesn't prevent the development of the disease after he's left the mining environment. But the statute says it has to be shown that it developed within that two-year period. Correct, and I would agree with that. Okay. That he has that two years. What I'm saying is the evidence is that coal worker's pneumoconiosis, it can develop after they leave the coal mine. I think the testimony there is it's unusual. Well, I think maybe if I understand it, since we've gotten over everything, if it's admitted, okay. I have another question. Was there an objection to the introduction? I don't believe so. I mean, it was in evidence. Okay. So it was in evidence, so it can be considered as to its relevancy and as to the weight, which is a normal process that any finder of fact engages in to establish a fact, more likely than not. Correct. Okay. He's saying an argument that even looking at those or giving them any real weight is not appropriate. I think that's his argument at that point. That's the way I understand it. That's my understanding. Okay. And what I'm saying is that this coal worker's pneumoconiosis, the testimony is that this is a progressive disease that had occurred. Not everybody gets it. Not everybody at coal mines suffers from coal worker's pneumoconiosis. CWP only presents in susceptible hosts, and I think the evidence shows it. If he had 35 years of coal mine employment, he would be having some, and he was a susceptible host, he would be having some signs of that disease before he left the coal mine. That's where it goes to the weight of the evidence. Interesting thing about this case is when you look at the dates of the X-rays from 2011, and I think this is particularly why the February 2011 NIOSH X-ray is relevant and entitled to great weight here. Mr. Bledsoe had an X-ray taken by NIOSH, interpreted by NIOSH. That X-ray was dated February 26, 2011. When did he leave mining? He left mining in November of 2010. Okay. So this was a couple months. That was his last, and he actually took his retirement, I think, in February. 289 days before he left. Yeah, and that didn't come out exactly right to me, but it was in November he left, was actually left in the coal mine, took his retirement effective sometime in the spring of 2011. He had that X-ray on February 26. NIOSH interpreted that as negative, an A reader and a B reader. There's no other interpretation of, well, Dr. Meyer also interpreted that chest X-ray, but there's no positive reading of that February 11 chest X-ray in evidence. There is a chest X-ray from March 8, 2011, 10 days later, that Dr. Smith and Dr. Alexander both read and interpreted as being positive as a 1 slash 0 perfusion and having opacities in all lung zones. Now, Klayman argued in his brief, you know, that there has to be some point where you go from having a negative chest X-ray to a positive chest X-ray, as with any other disease. I mean, if you've got cancer, there's some point there that that changes. But in this case, in 10 days, that would be nearly impossible, and that's what the evidence here says, to have a completely negative X-ray and then 10 days later have an X-ray that shows opacities throughout all lung zones. Was there any evidence to suggest that that would be the case? I mean, was there any physician, doctor coming in to say, yes, this is a progressive disease, but at some point, if you have it, though it said you couldn't see it earlier, 10 days later, it could erupt? The evidence was that it's unlikely that it would have not been there and then 10 days later be there. I don't think there's any evidence in the record, any medical evidence, that it could have appeared and have been perfused. Who says it's unlikely? Is it argument by counsel that it's unlikely? I believe Dr. Selby testified that it's unlikely that it would have progressed from a completely negative, and I apologize. I don't remember if it was Dr. Selby or Dr. Meyer, but I believe it was. But it was one of the doctors who found it positively. No, it was one of the experts for the employer that testified it would be very unlikely and almost impossible for a chest X-ray to go from completely negative to having findings of opacities in all lung zones within 10 days. Within 10 days. That's that. And there's been, like I said, no evidence submitted on behalf of the claimant that there was any pneumoconiosis prior to the March 8, 2011, chest X-ray. The other thing I wanted to talk about is the issue of whether having a negative chest X-ray allows the trier of fact to find that the claimant has CWP. Granted, a positive chest X-ray, it's clear. Everybody can say, hey, it's here, we've got it. Doctors have testified, yeah, it may show up pathologically. The thing is, in this case, we don't have any pathology evidence. We don't know if it's there. You know, Dr. Meyer has interpreted chest X-rays over a span of four years and said that they were all negative. We don't have any pathology to disagree with that finding. The testimony that 50% of coal miners may have it on autopsy, that didn't have a positive chest X-ray during their life, is not sufficient for the claimant to meet his burden of proof. It's for the claimant to prove that he has CWP. And saying that just because he has a negative chest X-ray, it can't be ruled out, is not meeting his burden of proof. If that was the case, there would just be a presumption that every coal miner has CWP. And there are presumptions regarding other issues in the statute. If the legislature wanted that type of presumption, they could have done that. But just presuming that they have a negative chest X-ray, they could still have CWP, there would be an award for every coal miner who filed a claim. What burden of proof does the defendant ever have? Or, pardon me, does the claimant ever have? The claimant? Or the respondent. The respondent, I don't think the respondent has a burden of proof here. I mean, we have no burden of proof. He might have a burden of production, but he never has a burden of proof. Correct. I would agree with that. We respond to the evidence that's presented. We counter the evidence that's presented. But the burden of proof is on the claimant. Always removed with the claimant. Correct. To prove disease, disablement, the entire case. Am I correct in the facts of this case that the claimant never introduced evidence of a positive chest X-ray prior to the time that this man left mining? That is correct. The only one that introduced evidence of any chest X-ray would have been Dr. Meyer. And he examined the chest X-ray from 2007, which is three years before this man left mining. Correct. Well, there's Dr. Meyer, and then there's the NIOSH B readings. Well, the NIOSH was 2011, wasn't it? Well, there were other NIOSH readings. So I suppose we're back to Mr. Wasora's argument this time is of what relevance are the negative readings prior to the time the man left mining if he never contended the man had COPD before that date? I want to make sure I understand. What is the relevance or the weight to be given those? Relevance. And what relevance is, he didn't have it in 2007, so what? He's only claiming that he had it in 2011. Yes, and that's true. I think, as we discussed before, though, that goes to the issue of weight. I think all the chest X-rays are relevant. I mean, they're all in evidence of consideration. Well, how far back would you go? I mean, you know, do you want to take a chest X-ray 15 years before he left mining? Well, and we have... Is it relevant that he doesn't have COPD a year and a half after he left? I would argue that that was relevant to show the progression of his CWP, that he didn't have it then. Well, that's the only way you're going to get into relevance on that. I think I'm finally understanding this. I think Mr. Wasora is trying to suggest there should be a legal... not legal presumption, I don't want to go there, but as a matter of law, that if the claim says, when I file the claim, I have CWP on the date I file the claim, right? On the date? Well, or the two years. We've got to have it within the two years of the last rights. Okay, within two years. Then the question is, is anything before that period of time relevant? I mean, except you're going to say, well, we assume it's a progressive disease, blah, blah, blah, but if I've got one piece of evidence that suggests that this time, within that period of time, supports my claim I have CWP, which is radiographic in 98% of these cases, then what allows you to introduce all this stuff prior? I would agree. I mean, wouldn't your burden of production to produce something that says, within that time or on that date, he doesn't have it? On the specific date of that chest X-ray that they interpreted as positive after? Yeah. And I would agree. We need to counter that, but I think showing the progression through the years, that this gentleman has had a number of years of coal mine exposure. I can understand your argument. If the first chest X-ray that is positive for CWP introduced by the claimant is, let's say, February 1st, and you introduce a chest X-ray that was taken three weeks earlier that says, no COPD. Well, he didn't develop it in three weeks. But if the first chest X-ray he introduced that he claims is positive is in the year 2011, of what relevance is a chest X-ray that you claim is negative from 2000? And I would agree with John that those chest X-rays that are way back, I mean, we've introduced some cases where they were taken three or four years after the person started mining. Then they worked for another 40 years. Those go to the weight to be given to those X-rays because they were so far back in the past. Yeah, but the discussion seems to be moving as a matter of law. So are we saying that as a matter of law, no chest X-ray ever taken before he leaves the mine should come into evidence? Is that what we're saying here? I think that's what Mr. Sore's argument is. I don't know what he's saying. Well, we'll let him find out. Go ahead with what you're saying. Okay, and that's what I was just saying is I think those are relevant to whether he had CWP, but chest X-ray taken 30 years before he left mining. But it goes to this. It goes to undermining the positive result, okay, with some type of medical evidence, I presume, that there's a rate of progression that, you know, I don't know if the medical data has anything on rates of progression to when it erupts, okay? And I think you could say, okay, the only X-ray we have before that positive one is within that range of accepted medical rate of progression, if it's there when you can't see it, and that it's likely that this positive X-ray falls within the eruption time from a progression. Now, that would seem to me to have relevance and could be considered, because basically what we have here is that everybody's a B reader, but everybody passed the driver's exam that's out there, and yet today you're going to see how many laws are being broken, okay, which we know we learned when we passed the test that's the wrong answer. So we're really talking about, you know, it's kind of somewhat like a Rorschach test, okay? We're almost lining up. Everybody sees this figure in a Rorschach test, and fewer people see it. So are we going to believe that that's what the Rorschach test really represents? I mean, that's kind of with radiographic evidence what we're reduced to. Well, and I think when you look at this case particularly, I mean, we're looking at an X-ray that's 10 days apart. I would agree that in some situations we've put in all the X-rays, and some of them have taken 30 years before, are not, you know, probably shouldn't be given any weight because they don't matter. But in cases where they're in close proximity to the end of the mining career, and there's evidence, medical evidence, that it generally doesn't progress once the mining, once the exposure ceases, I think those are certainly relevant to be given weight. Well, that's precisely what happened here. Didn't you say earlier, and I don't know if Mr. Ressort would contest it, that Dr. Meyer said given a short period of time it would be highly unlikely it would develop in 10 days? Right. So in this particular case, arguing relevancy all day long, it comes in because it corroborates his opinion. Correct. I mean, if there's a foundational he says it would be unlikely, in that evidence an X-ray supports his opinion, right? Right. And I don't recall right now if that was Dr. Selby or Dr. Meyer, but one of our experts did say that that was. So far it's in the record, yeah. It's in the record that it would be virtually impossible for that to appear in 10 days. So we would ask that the commission's decision be affirmed. Thank you. I have a question. Do you think the commission really is understanding this, the way they're trying to get to this? I mean, just, I mean, in other words, your opponent wishes for a remand to, with some directions along the lines of our questioning in your responses and his responses. I mean, because sometimes it looks like it's a counting exercise. And I don't know. Each arbitrator is a little bit different, and, you know, the commission sometimes, I think, just affirms that. Right. I think they, I've seen arbitration decisions where they note that those x-rays taken 30 years before, they don't give them any weight. And I've seen those decisions. So I think the commission, the arbitrators, understand that, you know, x-rays that are taken three years into the minor's employment are not going to be given any weight to be considered in determining. Again, bringing the discussion back into the facts of this case, didn't the arbiter here specifically delineate reasons why he chose Dr. Meyer and the others over the claimants' experts? Yes. I mean, that may be a general argument, but in my humble opinion, that isn't what happened in this case. That is correct. I mean, in this case, the arbitrator spelled out why she found Dr. Meyer to be insightful, informative, and persuasive about his background. Over the other experts. So I certainly think here there was the consideration given to all of the x-ray evidence. Thank you. Thank you, counsel. Did we equalize the time for you, counsel? I think so. Thank you. Okay. Thank you. Okay. Reply. First thing I've got to say is I'm learning today. This is a matter of first impression, these arguments I'm bringing up. But over the last 30 years that I've done this, there have been several times that's happened. And it's been worked out. I'd like to work out the day. Sometimes it takes longer. But I have to say that based on the give and take that's been going on both with Ms. Webb and with me, I think the court's asking the proper questions. That's all I can ask. And then you will tell me, and then if it's not what I agree with, the next time I come up and try to get something. But I'm just happy with the way the discussion is going here today. With Justice Hudson's last question there, that the arbitrator gave reasons why Dr. Meyer was more. Didn't he? With all due respect, so what? He also looked at 20 X-rays that couldn't prove that the respondent was right and put him in. But the reason I would say so what is the fact that you have been arguing that essentially the arbitrator and the commission just look at the staff here. This guy says this. He's got it. This is negative. Therefore, we throw up our hands and we arbitrarily decide to go with the respondents. Here, we sort of answered what you said, with all due respect. It wasn't just that he threw up his hands. He delineated specific reasons why he chose Meyer over your experts. Maybe they're wrong, but you asked for specific reasons. And I think in this case you sort of got it. I'm giving the court a way to agree with Dr. Meyer and agree with Dr. Smith and bring this evidence close together. And like I said, that flow chart is what counts. If what you're saying is Dr. Meyer is more persuasive and all these things better for the ILO reading, there is no medical basis in this record for an arbitrator or commissioner to make that choice. Because to make that choice, what they would have to do is look at the x-ray and say this is better for that x-ray than this one. None of them are qualified for it, and none of them saw the x-ray. But there is something in here which should be looked at. They're completely competent to do, and I think they're charged to do by law, and that is go one step down from the x-ray itself and say what did they say it meant. That's what they should judge. And on this one, I can say that they're both right. And they would say that they're both right. I can say Meyer is correct that if he saw nothing, then what that means is he can't prove it's not there. I think Meyer would look at what Smith said and say, yeah, he's right. He saw something there, and this guy's got the exposure, then that's enough to make a diagnosis. This is a very close call, but what the commission needs to do in the arbitration is look at the right piece of evidence, make the right comparison, and it's not looking at the ILO forms. It's looking at what they say it means. About when it manifests itself, hey, look, everything happens on Sunday. Whenever you got a positive x-ray, you knew it became positive sometime. There is actually no way to know when it became positive, but there is one thing for sure. One time it wasn't, and then another time it was, and that time happened at some discreet day. So it doesn't make any difference if Dr. Suggs says it's unlikely that, boy, in this period of time at the end he would have got it. Unlikely means it's possible, and it is. So what Dr. Sugg would say there about very unlikely really doesn't mean anything as far as this case has gone. As far as objecting to these x-rays, my personal theory is that I want the arbitrator to have everything they can have. I rarely object to evidence. I want to get it all on the table. In doing that, probably, Justice Hoffman, you're correct, I have made it a matter of weight when I let it in. Right, because then it became, you can't say it's irrelevant and not probative if you let it in. The evidence has got to come in for some weight, does it not? Yeah, it gets back to that Southern Illinois use of words. If I've let it in, okay, then I will say, okay, it's a matter of weight. And then what I'll say is, and it should have no weight because it doesn't answer the question. But that's the argument. That is, you have taught me that this morning, and I appreciate that. So can we agree on these things? And this will be the outcome determinative pattern. Number one, the arbitrator and commission have no basis to choose between ILO readings. They can't say Meyer was right when he said there was nothing on the x-ray and this guy was wrong because they have no basis for it. They don't see the x-ray, they have no training. They might like Meyer, and that's fine. Second thing is, each B reader said what their x-ray meant, and the arbitrator and commission should, must, have to make that determination. And what they said decides the case. They said a positive and negative x-ray are two different pieces of discrete evidence. The negative x-ray can only mean this, that we can't prove he doesn't have it. That's all it can mean. The positive x-ray can mean he has it, which brings us down to our final step, is what do we do to look at the evidence and make a decision on who wins? You know, in law school, we say the biggest pile of evidence, the best pile of evidence. And so on the pile for the claimant side, he has it. On the pile for the respondent side, can't say he doesn't. Now, here's the biggest thing. The respondent could have taken time with the x-rays. It needs to. It should. The first thing it does when it opens up a file, I think you'll all agree, is they say, has Bruce blown a statute of limitations? Does he have a 1F problem? Is CWPN on a five-year, but COPD out because it's a three-year case? That's the first thing they do. They need to go one step further and say, do I have a problem? And they can fix it easy enough. All they have to do is have their x-rays taken and their exam timely. In other words, two years after the date of last exposure or further. And then, I can't say that they should get no weight. Okay. Thank you. Thank you, counsel, both for your fine arguments this morning. This matter will be taken under advisement and a written disposition shall issue.